THE STATE *VS.* FRITH ET AL.

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, FOR THE PARISH OF AVOYELLES, THE JUDGE OF THE SEVENTH PRESIDING.

Where a bail bond is taken in pursuance of an order of court; the entry on the minutes requiring bail in seven hundred dollars, when the bond is taken in the penalty of seven thousand dollars; and the judge, at a subsequent term corrects and alters the minutes to seven thousand dollars: *Held*, That the bond is not thereby invalidated; and the sureties can only be relieved on the score of error in signing

it, which does not result from altering the minutes whether done legally or illegally.

The sureties in a bail bond are not entitled to an *exoneratur* when they have made no formal surrender of the principal; even if he be confined in prison for a subsequent offence not bailable, and afterwards makes his escape.

So, also, bail are not exonerated when they have made no surrender of the principal, even where the sheriff and coroner both resign; for these officers are required to act until their successors are appointed.

This case comes up from a judgment on a bail bond against the principal and his two sureties, taken in the penal sum of seven thousand dollars.

The defendant, Archibald Frith, was indicted for stabbing with the intent to kill and murder one S. Read, and gave bail in the sum of seven thousand dollars, with two sureties.

In entering up the judge's order requiring bail, it was written seven *hundred* dollars, but the sheriff took bail, and the principal, with his two sureties, signed a bail bond for seven thousand dollars. It was afterwards, at the next term, suggested to the judge presiding, that there was a clerical error in entering the order of bail on the minutes of the court, and he ordered the word *hundred* to be stricken out, and the word *thousand* written over it, which made it read seven thousand instead of seven hundred dollars.

While out on this bail bond, Frith was arrested and committed to jail for the murder of one John Dorman, in June, 1838. During his confinement, and before any indictment was found, he broke jail, and made his escape. At the October term, 1838, of the Avoyelles District Court, Frith and his bail were called out on their recognizance, made default, and a judgment *ni. si.* entered; which was to be made final at the next term of the court, *unless* the defendants should show cause to the contrary.

The defendants filed their answer to the next term, and resisted the final judgment on the following grounds:

1. The bail bond signed by them could have no legal effect, inasmuch as there was no legal order of court, or any competent authority for taking such an obligation. The order

requiring a bail bond, was for the sum of seven hundred dollars, as appears from an inspection of the minutes, or records of the court. The records showed this for six months after bond was taken until they were illegally altered by the court, and that this alteration is illegal, and was made without notice to them, and without their knowledge.

2. If the bond is legal and binding, it can only be for seven hundred dollars, agreeably to the original order of court under which it was taken.

3. The state cannot recover on this bond, because the principal was arrested and confined in prison, charged with the crime of murder, which made him no longer bailable : The defendants were, therefore, entitled to have an *exoneratur* entered.

4. The existence of the fact that the principal was confined in jail for a crime which was not bailable, is so absolutely inconsistent with the obligations of the bail bond, as to vitiate and supersede its legal operation. The prisoner could not be in the custody of his sureties, and confined in close jail for an offence not bailable.

5. The fact of being imprisoned for an offence not bailable, the motive or inducement for giving bail in the first instance ceased from that moment.

6. They are discharged by operation of law, because both the sheriff and constable resigned, and they were precluded from making a formal surrender. In fact it was impossible, when there was no officer to whom it could be made.

For all these grounds and causes they pray to be discharged, and for judgment discharging them with their costs allowed.

Upon these issues the cause was tried. The district judge rendered judgment *in solido*, against A. Frith, principal, and F. Cullum and T. Mills, his sureties, in the sum of seven thousand dollars ; from which the defendants appealed.

*Brent*, and *O. N. Ogden* (District Attorney,) argued on behalf of the state, and contended that the error in the entry on the record was merely clerical, and the court had a right

WĖSTERN DIST.
October, 1839.
═══════════
THE STATE
vs.
FRITH ET AL.
to correct it. There is a distinction between amending these mistakes which are occasioned by the act of the party, and those which are occasioned by the act of the clerk, and are mere clerical mistakes. *Tomlin's Law Dictionary*, vol. 1, 71, 74. *Cowper's Reports*, 699.

2. The order of the court requiring bail, was merely directory to the sheriff, and communicated in fact *ore tenus* by the judge to that officer. The sheriff was not obliged to inspect the minutes to know how the order was entered, nor was it necessary that a copy should be served on the accused ; and no notice of any irregularity in the entry of this order was taken before signing the bond, and not until after its condition was broken ; consequently, the defendants knew nothing of the manner in which it was entered, and it made no part of the condition or basis of the obligation of the bond. There was no error to invalidate the contract entered into by signing the bond.

3. There is a curious fact presented by the record, which shows the entry of the clerk to be purely an error in writing up the order of court, requiring bail of the principal and his accessories. The sum of seven hundred dollars only was exacted from the principal, according to this order, when the accessories were required to give bail in the sum of two thousand dollars each. This shows the error to be palpable in the entry; for a *nolle prosequi* was entered as to the accessories.

4. No irregularity in any of the proceedings anterior to the taking of the bond, nor any want of authority in the person taking it, can be pleaded, as detracting in any degree from its validity, and binding force and effect, for it is a settled principle of our law, that *as a man binds himself, even so is he bound*. 3 *Martin*, 565. 2 *Martin*, *N. S.*, 681. 5 *Ibid.*, 194. 4 *Ibid.*, 25.

5. The bond in this case was a *voluntary* obligation incurred by the obligors, and if the consideration of it be not illegal, according to our laws, it will be considered as *a law* in relation to the parties concerned. *Louisiana Code*, 1895.

6. Under no circumstances can the principal in this bond

be relieved from its obligations, because his non-compliance WESTERN DIST.
with its stipulations has resulted from his own act, and no *October*, 1839.
man will be permitted to take advantage of his own wrong.

THE STATE
*vs.*
FRITH ET AL.

*Hyams*, for defendants, insisted, that no alteration of the record could be made, even with the view to correct an error. Judicial proceedings must be proven by the record, and not by parole; and courts of justice can only speak by means of their record. 2 *Starkie on Evidence*, 545, 571–2. Proof of public documents, such as records of a court, is by inspection. 1 *Ibid.*, 189. No collateral proof is admissible to impeach a record. 2 *Ibid.*, 705.

2. Where a deed or instrument is executed under some special authority, which prescribes the mode and form of execution, it will be invalid, unless all these requisites be pursued and observed. 1 *Starkie*, 322.

3. The bail should have been released as soon as the principal was confined to prison on the subsequent charge of murder. The courts in England universally give relief where the principal is in confinement by the act of the government, either by *habeas corpus* or *exoneratur*. They do not require a *habeas corpus* where it is inconvenient, but relieve by *exoneratur*. 13 *East's Reports*, 457–8.

*Dunbar, Bryce* and *Elgee*, also appeared for the defendants, and relied on the grounds set up in the answer or cause shown to the rule.

*Martin, J.*, delivered the opinion of the court.

This is a civil proceeding against sureties on their bail bond. They were regularly called on their recognizance at the proper term of court, and failed to appear. A judgment, *ni si*, was entered, and a rule taken to show cause why final judgment should not be entered up.

The defendants showed for cause, why judgment should not be entered on their recognizance for the appearance of the principal, who was charged with an assault and stabbing with an intent to commit murder, the following grounds:

1. The illegality of the bail bond.

2. The state cannot recover, and the bail are entitled to an *exoneratur*, because they were disabled from surrendering the principal, in consequence of his close confinement in prison for an offence not bailable.

3. The sheriff and coroner having resigned, there was no officer or person to whom the bail could surrender the principal.

I. It is contended that the bond was illegal, because there was no order of court or any competent authority to take it; the order of court requiring a bond being for the sum of *seven hundred* dollars, as appears from an inspection of the record. That the records of the court, as they appeared for six months after taking the bond, exhibited the order of bail in the sum of seven hundred dollars only; and if this entry was afterwards altered or erased, it was done illegally, and without the knowledge or notice to these defendants; and if the bond is good for any sum, it can only be so for the sum of seven hundred dollars, agreeably to the order of court, or authority under which it was taken.

It appears from the record and evidence of the case, there was an order of court requiring the principal charged with the offence, to give bail for his appearance at court. The fact further appears that this order, as entered on the minutes of the court, directed the penalty of the bond to be in the sum of seven hundred dollars; and at the next term, the court ordered the entry to be amended, by the insertion of the sum of seven thousand dollars. The defendants had, in the meanwhile, given bond in the penalty of the latter sum.

*Where a bail bond is taken in pursuance of an order of court, the entry on the minutes requiring bail in seven hundred dollars, when the bond is taken in the penalty of seven thousand dollars, and the judge, at a subsequent term,*

Admitting the amendment of the order to be illegal, it cannot affect a bond which was given previously thereto. And if the defendants can be relieved at all, it must be on the ground of error. Nothing shows this to be the case. If there be no error, the bond must be valid for the sum mentioned therein. And when we consider the smallness of the sum of *seven hundred dollars*, demanded as a penalty from the principal offender, in an indictment for an assault with an intent to murder, in connection with the fact of two

thousand dollars having been demanded of the accessory, under the same charge; and also the circumstance of the principal and his sureties having signed the bond, with a penalty of seven thousand dollars, and likewise from the additional fact of the district judge making the amendment or alteration in the original entry, from seven hundred to seven thousand dollars, whether done illegally or not, we are forced to the conclusion that there was no error in the execution of the bond.

II. The bail are not entitled to an *exoneratur* in this case, because they have made no formal surrender. The principal being confined or imprisoned for an offence not bailable, did not prevent a formal surrender, which might have been made. The principal being in the custody of the sheriff, by a formal declaration to that officer, that the bail wished to surrender him, and did not consider themselves any longer bound for his appearance, they might have been exonerated.

III. In relation to the other ground relied on, the defence is equally untenable. The sheriff and coroner, even after having resigned, were empowered by law to act, and to continue their respective functions and duties until their successors were appointed. Their resignations, therefore, did not prevent the surrender of the principal offender into the custody of the law and its officers.

It can hardly be doubted that before the passage of the law by the legislature, requiring sheriffs and other officers to act after their term of service has expired, until their successors are appointed, or without it, the bail could not be discharged by the resignation of the sheriff and coroner; although it might be inconvenient, and their liability extended beyond their wish to retain the principal offender, until a new officer should be appointed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.